**Electronically Filed**
**Intermediate Court of Appeals**
**29636**
**28-OCT-2013**
**08:59 AM**

NO. 29636

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

DONALD J. LANGER and DAVID LANGER, Plaintiffs-Appellants,
v. RONALD RICE, Defendant-Appellee, and
DOE DEFENDANTS 1-20, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-1340)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Foley and Leonard, JJ.)

Plaintiffs-Appellants Donald J. Langer and David Langer
(**Langer**)[1] appeal from the Circuit Court of the First Circuit's
(**Circuit Court**) Final Judgment entered on January 13, 2009.[2]
The Circuit Court granted summary judgment in favor of Defendant-
Appellee Ronald Rice (**Rice**) on Langer's claims of breach of
contract (Counts I and II) and fraud in the inducement (Count
III). On appeal, Langer asserts that the Circuit Court erred in
granting summary judgment in favor of Rice on these counts. We
conclude that the Circuit Court erred in granting summary
judgment on the basis of *res judicata* and/or judicial estoppel,
but that Langer's fraudulent inducement claim is barred by the
applicable statute of limitations.

I.    BACKGROUND

In the late 1960s, Rice manufactured and sold a suntan
product called "Tropic Tan." Langer purchased Tropic Tan from

---

[1]    David Langer is Donald's brother and the assignee of certain
rights under the purported contract with Rice.

[2]    The Honorable Gary W.B. Chang presided.

Rice for resale at motels and pool decks in Daytona Beach, Florida. Although Tropic Tan was manufactured in Florida, its label represented that it was manufactured in Hawai'i. Rice believed the made-in-Hawaii label was an effective sales tool. He then changed the name of his product to "Hawaiian Tropic."

Rice approached Langer with business proposals regarding relocating Hawaiian Tropic to Hawai'i. In 1972, Langer and Rice formed a partnership in Hawai'i for the manufacture, distribution, and sale of Hawaiian Tropic. Shortly thereafter, however, both parties incorporated separate business entities in Hawai'i and Florida. Langer incorporated as "Don Suntan, Inc." and Rice as "Tanning Research Laboratories, Inc." Through these entities, Langer functioned as the exclusive distributor of Hawaiian Tropic in Hawai'i and various other regions through contracts with Rice's corporation.

Between 1972 and 1976, Langer and Rice entered into various discussions and/or agreements regarding Langer's interest in the Hawaiian Tropic business under Rice's corporation. These discussions and/or agreements were the basis for two prior lawsuits in Volusia County, Florida. Based on the prior lawsuits, Rice filed a motion for summary judgment in the instant case asserting, *inter alia*, that Langer's present claims were barred by res judicata. On January 13, 2009, the Circuit Court entered final judgment in favor of Rice and dismissed all claims on the basis of res judicata, judicial estoppel, and the statute of limitations.

A. Present and Prior Cases

1. *Present Case - the Sale Proceeds Agreement*

In the present case, Langer alleges that he became concerned that his investment in the Hawaiian Tropic brand would be lost if Rice sold the business. Rice agreed that if Langer continued to distribute the Hawaiian Tropic product, he would receive ten percent of the sale proceeds if the business ever sold. Sometime before May of 1973, Rice purportedly confirmed

2

this agreement in a signed, handwritten letter (**Proceeds Agreement**) which provided: "Let it be known that . . . . In case of sale of Hawaiian Tropic, Don Langer will receive 10% of the gross proceeds of the sale if he is still living in Hawaii, working for Hawaiian Tropic, and meeting all of the above requirements of this Agreement." As consideration, Langer assisted in the development of Hawaiian Tropic, relocated to Hawai'i, managed the Hawaiian Tropic manufacturing facility, distributed and sold the product in Hawai'i, and relinquished his interest in the Hawaiian Tropic trademark.

Langer contends that from 1972 to 1976, the parties continued to negotiate regarding Langer's potential receipt of an interest in Rice's corporation. However, he maintains that the Proceeds Agreement remained a separate, enforceable contract.

In 2007, Rice sold Hawaiian Tropic to Playtex Products, Inc. for approximately $108 million. On July 20, 2007, Langer filed the complaint herein, alleging that Rice breached the Proceeds Agreement by failing to deliver ten percent of the sales proceeds (Counts I and II). He also asserted that Rice fraudulently induced Langer to relocate to Hawai'i, manage the Hawaiian Tropic manufacturing facility, distribute and sell the product in Hawai'i, and relinquish his interest in the Hawaiian Tropic trademark in exchange for the Proceeds Agreement (Count III).

2. *First Ten Percent Case - Stock Agreement*

On September 29, 1982, Langer filed a complaint against Rice in Volusia County, Florida (Case No. 82-4371-CA-01). Langer's primary claim centered on an agreement between the parties that allegedly arose in May of 1976. Langer alleged that after negotiations, Rice agreed to grant him ten percent of the stock in Tanning Research Laboratories, Inc. (**Stock Agreement**). As consideration, Langer assigned the Hawaiian Tropic trademark and his interest in the partnership to Rice's corporation. Rice failed to tender the stock as agreed. Langer then sought damages

for breach of contract, unjust enrichment, and fraudulent inducement of the trademark and partnership assignments.

Rice filed a motion for summary judgment arguing that Langer's claims were time-barred under the applicable statute of limitations. In his memorandum in opposition, Langer characterized the Proceeds Agreement as part of an evolution of inchoate proposals that culminated in the Stock Agreement. Langer described the following documents as evidence of the evolving agreement: (1) the Proceeds Agreement, as evidenced by the same handwritten letter proffered in the instant case; (2) a draft "Irrevocable Trust" granting Langer ten percent of the stock in Rice's corporation, contingent on sale of the corporation; and (3) further drafts and proposals regarding Langer's acquisition of a ten percent interest in Rice's corporation. Langer testified that the Stock Agreement "most definitely" superseded all earlier proposals, including the Proceeds Agreement.

The court entered summary judgment in favor of Rice on all claims, based on the statute of limitations. Langer appealed the judgment to Florida's Fifth District Court of Appeal. In his appellate briefings, Langer described the Proceeds Agreement as "the beginning of continuous negotiations to reach an agreement establishing the time and manner in which Langer would receive his 10% interest in the Hawaiian Tropic business." The Florida Court of Appeal affirmed the judgment without opinion.

3. *Second Ten Percent Case - Incentive Agreement*

While Langer's appeal from summary judgment in the first case was pending, his corporation (Don Suntan) had another case pending against Rice's corporation in Volusia County (No. 83-955-CA-01). Langer filed an amended complaint in this case adding himself as an individual co-plaintiff. He also added three new counts to the complaint seeking declaratory relief and damages for breach of contract. Langer alleged that he and Rice had entered into an incentive agreement for a ten percent

4

interest in Rice's corporation — essentially the same agreement described in the first case. As consideration, Langer alleged his prior and continuing efforts to promote the Hawaiian Tropic product.

In the amended complaint, Langer addressed the Proceeds Agreement and proffered the handwritten letter evidencing the agreement. He described the Proceeds Agreement as part of a single agreement that was modified over time and later culminated in an incentive agreement.[3] Langer alleged that as an incentive for him to promote the Hawaiian Tropic product, the parties originally agreed that he would receive ten percent of the proceeds in the event of a sale. However, the parties later modified the Proceeds Agreement by mutual consent. Instead of ten percent of the sale proceeds, the parties agreed that Langer would receive ten percent of the stock in Rice's corporation. This modification was evidenced by several draft agreements, although Langer never produced an executed agreement.

Rice's corporation filed a motion for summary judgment on the amended claims regarding the Stock Agreement on the basis of res judicata. The Florida court granted the motion and

---

[3]    The pertinent text of the complaint reads:

31. In 1972 LANGER and RICE agreed that as incentive for LANGER to use his best efforts in promoting products sold under the tradename "Hawaiian Tropic" in the State of Hawaii that *Langer would receive in the event of sale of such business 10% of the net proceeds.* Said agreement was evinced by a letter from RICE to LANGER.
32. On May 18, 1973, RICE formed the corporation, TANNING RESEARCH, for the purpose of holding title to and conducting the business of development, manufacture, distribution and sale of suntan products sold under the tradename "Hawaiian Tropic."
33. Subsequent to the incorporation of Tanning Research, RICE on behalf of Tanning Research *modified the original agreement* with LANGER and agreed that LANGER would receive 10% of the stock of Tanning Research for his continuing efforts in promoting "Hawaiian Tropic" products in the State of Hawaii. Said modification is evidenced in part by several proposed trust agreements prepared by Tanning Research for the benefit of LANGER.

(Emphasis added).

5

dismissed the new claims. Langer did not appeal. However, in a motion for rehearing, he conceded that res judicata "might apply as a bar to Count III [for declaratory relief and damages arising from the Stock Agreement]."

II. POINTS OF ERROR

On appeal, Langer asserts that the Circuit Court erred in granting summary judgment. Specifically, he maintains that the court erred by applying res judicata to bar his claims and by failing to resolve all presumptions and inferences concerning the prior cases in his favor.

III. APPLICABLE STANDARDS OF REVIEW

An appellate court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005).

The Hawai'i Supreme Court has often articulated the standard as the following:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. (quoting Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)).

Hawai'i Rules of Civil Procedure Rule 56(e) provides in relevant part:

> Rule 56. Summary Judgment.
>
> . . . .
>
> (e) Form of Affidavits; Further Testimony; Defense Required. . . . When a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not

> so respond, summary judgment, if appropriate, shall be
> entered against the adverse party.

Haw. R. Civ. P. 56(e).

Thus, "[a] party opposing a motion for summary judgment cannot discharge his or her burden by alleging conclusions, 'nor is [the party] entitled to a trial on the basis of a hope that [the party] can produce some evidence at that time.'" Henderson v. Prof'l Coatings Corp., 72 Haw. 387, 401, 819 P.2d 84, 92 (1991) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2727 (1983)).

Although Hawai'i courts have not considered the standard of review for judicial estoppel, other courts have held that "[w]hether the elements of judicial estoppel have been met by the facts in a particular case is a question of law . . . reviewable de novo." Olson v. Darlington Mut. Ins. Co., 723 N.W.2d 713, 720 (Wis. Ct. App. 2006); accord Blix St. Records, Inc. v. Cassidy, 119 Cal. Rptr. 3d 574, 580 (Cal. Ct. App. 2010); Motorola Inc. v. Amkor Tech., Inc., 958 A.2d 852, 859 (Del. S. Ct. 2008); Marcuse v. Del Webb Cmtys., Inc., 163 P.3d 462, 468 (Nev. 2007); Watertown Concrete Products, Inc. v. Foster ex rel. Estate of Foster, 630 N.W.2d 108, 112 (S.D. 2001); In re Estate of Boote, 198 S.W.3d 699, 719 (Tenn. Ct. App. 2005); Baldwin v. Silver, 196 P.3d 170, 172 (Wash. Ct. App. 2008); but see, Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (stating that "[w]e review the district court's application of the doctrine of judicial estoppel to the facts of this case for an abuse of discretion"). Once the requisite elements are met, however, the trial court has discretion whether to invoke judicial estoppel. Olson, 723 N.W.2d at 720.

Under the Full Faith and Credit Clause of the U.S. Constitution,[4] we must afford the previous Florida judgments the same preclusive effect as the state that rendered them. See infra part IV.B. Accordingly, we look to Florida law for the applicable standard of review regarding res judicata. Whether a trial court correctly applied res judicata is a question of law reviewed de novo. Engle v. Liggett Grp., Inc., 945 So.2d 1246, 1259 (Fla. 2006).

IV. DISCUSSION

A. Judicial Estoppel

At the hearing on Rice's motion, the Circuit Court granted summary judgment on the basis of res judicata, judicial estoppel, and the applicable statute of limitations. Although the court did not further elaborate on its reasoning, presumably it concluded that Langer was judicially estopped from asserting that the Proceeds Agreement was a separate, enforceable agreement, contrary to his assertions in prior cases. On appeal, Langer contends that judicial estoppel is inapplicable because a necessary element of the doctrine (judicial acceptance of a party's prior position) is not met.[5] We agree.

Under the doctrine of judicial estoppel, "[a] party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him." Roxas

---

[4] The Full Faith and Credit Clause states the following:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const. art. IV, § 1.

[5] Langer fails to assert any argument regarding judicial estoppel in his opening brief, although both parties ultimately address it on appeal. This court therefore has discretion to disregard it. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) ("Points not argued may be deemed waived.").

v. Marcos, 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998) (citation and internal quotation marks omitted). The doctrine "prevents parties from playing 'fast and loose' with the court or blowing 'hot and cold' during the course of litigation." Id. The doctrine further prevents a party from "adopting a position that is inconsistent with a stance taken in prior litigation." Lamonds v. General Motors Corp., 34 F. Supp. 2d 391, 394 (W.D. Va. 1999).

Judicial estoppel protects the integrity of the courts and the judicial process, not litigants. Rosa v. CWJ Contractors, Ltd., 4 Haw. App. 210, 219, 664 P.2d 745, 751 (App. 1983) ("At stake is the integrity of the judicial process."); Lamonds, 34 F. Supp. 2d at 394. It seeks to preserve "the orderliness, regularity, and expedition of litigation." Ueoka v. Szymanski, 107 Hawai'i 386, 397, 114 P.3d 892, 903 (2005) (citation and internal quotation marks omitted); see also State v. St. Cloud, 465 N.W.2d 177, 180 (S.D. 1991) (noting that judicial estoppel concerns "the intentional assertion of an inconsistent position that perverts the judicial machinery") (citation and internal quotation marks omitted). Judicial estoppel prevents a party who prevails on one position from later taking a contrary position to gain the upper hand. Ferguson v. Building Materials Corp. of America, 295 S.W.3d 642, 643 (Tex. 2009).

Most jurisdictions apply judicial estoppel when, at minimum, the following elements are met:

> (1) The party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding;
> (2) the prior inconsistent position must have been accepted by the tribunal; and
> (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage.

King v. Herbert J. Thomas Mem'l Hosp., 159 F.3d 192, 196 (4th

Cir. 1998) (paragraph structure altered).[6] Although Hawai'i courts have not expressly adopted those elements, our case law is generally in accord. See Roxas, 89 Hawai'i at 124, 969 P.2d at 1242; Rosa, 4 Haw. App. at 220, 664 P.2d at 752 ("A party is precluded from subsequently repudiating a theory of action accepted and acted upon by the court.").

Here, the first element is met. Langer's position in prior judicial proceedings (the two Florida cases) is factually incompatible with his position at bar. In the prior cases, he asserted in pleadings, memoranda, and appellate briefings that the Proceeds Agreement was not a final, enforceable contract but only the first step in negotiations culminating in the Stock Agreement. This position is incompatible with the basis of the complaint herein, that the Proceeds Agreement is a separate, enforceable contract that was not superseded by other agreements. See Island Directory Co., Inc. v. Iva's Kinimaka Enters., Inc., 10 Haw. App. 15, 23, 859 P.2d 935, 940 (App. 1993) (existence of a contract or agreement is a question of fact).

The third element concerns whether the party's assertion of conflicting positions is intentional.[7] Lamonds, 34 F. Supp. 2d at 395. The party must have been chargeable with "full knowledge of the facts." Rosa, 4 Haw. App. at 218, 664 P.2d at 751 (quoting 28 Am. Jur. 2d Estoppel and Waiver § 68, at 694-95 (1966)). Judicial estoppel will not apply where a party was genuinely mistaken or introduces new, intervening facts. See

---

[6] See also New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001); Bates v. Cook, Inc., 615 F. Supp. 662, 672-73 (M.D. Fla. 1984); Dupwe v. Wallace, 140 S.W.3d 464, 467 (Ark. 2004); Moy v. Ng, 864 N.E.2d 752, 756-57 (Ill. Ct. App. 2007); Commonwealth v. DiBenedetto, 941 N.E.2d 580, 591-92 (Mass. 2011) (reciting substantially similar elements); St. Cloud, 465 N.W.2d at 180 (reciting substantially similar elements); DeWoody v. Rippley, 951 S.W.2d 935, 944 (Tex. Ct. App. 1997); Johnson v. Si-Cor, Inc., 28 P.3d 832, 834 (Wash. Ct. App. 2001).

[7] This element does not require evidence of the party's actual intent. Lamonds, 34 F. Supp. 2d at 395. Rather, it is designed to effectuate the policy of judicial estoppel to protect the integrity of the judicial process. Id.

Roxas, 89 Hawai'i at 124, 969 P.2d at 1242; St. Cloud, 465 N.W.2d at 180; King, 159 F.3d at 196-97.

Here, Langer has not alleged any new facts or evidence for his changed position regarding the Proceeds Agreement.  To the contrary, the complaints in all three cases indicate that Langer has characterized the Proceeds Agreement in the manner most amenable to his claims.  In the Florida cases, he utilized the agreement to bolster his claim that a valid, enforceable Stock Agreement had emerged from years of negotiation.  When that argument failed, he sought to enforce the Proceeds Agreement itself in the instant case.  The assertion of conflicting positions is therefore intentional.

The second element, however, requires that the party's prior position was "accepted and acted upon by the court" or has "detrimentally affected the opposing party."  Roxas, 89 Hawai'i at 124 n.19, 969 P.2d at 1242 n.19 (quoting Rosa, 4 Haw. App. at 220, 664 P.2d at 752).  The prior court need not have expressly adopted the merits of the party's position; it is sufficient that the party obtained an advantage or benefit from the prior inconsistent position.  See Ueoka, 107 Hawai'i at 397, 114 P.3d at 903; Lamonds, 34 F. Supp. 2d at 395; Moy, 864 N.E.2d at 757.

Here, Langer was unsuccessful in using his prior position regarding the Proceeds Agreement to gain an advantage. His claims in the prior cases were dismissed on summary judgment. Moreover, the original summary judgment order was predicated upon the running of the statute of limitations — something far removed from the question of whether the Proceeds Agreement evolved and became supplanted by the Stock Agreement.  As a result, the court in both cases did not accept or act upon his prior position.  Nor did Langer's change in position detrimentally affect Rice, i.e., through reliance or unfair prejudice.  See Roxas, 89 Hawai'i at 124, 969 P.2d at 1242; see also Weiser v. Wert, 554 S.E.2d 762, 764 (Ga. Ct. App. 2001) (plaintiffs did not obtain advantage from prior position in bankruptcy proceeding which they voluntarily

11

dismissed); Johnson, 28 P.3d at 833 (in bankruptcy case, appellant's failure to disclose pending negligence claim against McDonald's did not warrant judicial estoppel where he derived no benefit or advantage from failing to disclose); c.f. Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc., 568 F. Supp. 2d 1152, 1196-99 (C.D. Cal. 2008) (party obtained unfair advantage by using prior position to gain favorable tax treatment). Because the prior courts did not accept or act upon Langer's position, we conclude that judicial estoppel is inapplicable.

B.     Res Judicata

Langer contends that the Circuit Court erred in granting summary judgment on the basis of res judicata. He maintains that res judicata is not applicable because two essential elements (identity of cause of action and identity of "thing sued for") are lacking. Central to this claim is his assertion that the Proceeds Agreement is separately enforceable and apart from the Stock Agreement that formed the basis of the prior cases.

As a threshold issue, we consider which law applies. Both parties have consistently relied upon Florida law both on appeal and in the proceedings below. The U.S. Supreme Court has held that under the Full Faith and Credit Clause of the U.S. Constitution, "where a state court has jurisdiction of the parties and subject matter, its judgment controls in other states *to the same extent as it does in the state where rendered.*" Riley v. N.Y. Trust Co., 315 U.S. 343, 349 (1942) (emphasis added). For purposes of res judicata, "a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that where the judgment was rendered." Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 439 (1943). As a result, a cause of action "merged in a judgment in one state" under the doctrine of res judicata "is likewise merged in every other." Id. "Full faith and credit thus generally requires every State to give to a judgment at least the res judicata

12

effect which the judgment would be accorded in the State which rendered it." Durfee v. Duke, 375 U.S. 106, 109 (1963); see also Wong v. Cayetano, 111 Hawai'i 462, 477, 143 P.3d 1, 16 (2006) (in determining preclusive effect of federal judgments, states must look to federal law regarding res judicata); Brown v. Progressive Direct Ins. Co., No. 29348, at *4 (App. May 5, 2010) (mem.). As the parties have done, we look to Florida law to determine whether res judicata bars the present suit.[8]

Res judicata, or claim preclusion, prevents parties from relitigating a cause of action against the same opponents (or their privies) when final judgment was rendered on the merits. Wade v. Clower, 114 So. 548, 552 (Fla. 1927). Four elements must be met for res judicata to apply:

(1) Identity of the cause of action;

(2) Identity of the "thing sued for";

(3) Identity of the persons and parties to the actions; and

(4) Identity of the quality or capacity of the persons for or against whom the claim is made.

McGregor v. Provident Trust Co. of Philadelphia, 162 So. 323, 328 (Fla. 1935). Res judicata bars subsequent litigation of "every other matter which might with propriety have been litigated and determined in [the prior] action." Wade, 114 So. at 552.

The parties do not dispute that elements (3) and (4) are present. Langer and Rice, or their privies, were both parties in the prior Florida cases. Both were involved in the same capacity. At issue, however, are elements (1) and (2).

1.  *Identity of the Cause of Action*

Res judicata only applies if a party is asserting the same cause of action. McGregor, 162 So. at 328. Florida case law has paved a somewhat muddled path in determining what

---

[8]    As a practical matter, Florida law regarding res judicata is generally in accord with Hawai'i law. See Smallwood v. City and County of Honolulu, 118 Hawai'i 139, 146-47, 185 P.3d 887, 894-95 (App. 2008); Tortorello v. Tortorello, 113 Hawai'i 432, 439, 153 P.3d 1117, 1124 (2007) (setting forth elements of res judicata).

constitutes a single cause of action. A number of cases set forth the definitive test as "whether the facts or evidence necessary to maintain the suit are the same in both actions." Albrecht v. State, 444 So.2d 8, 12 (Fla. 1984) (superseded by statute on other grounds); accord Leahy v. Batmasian, 960 So.2d 14, 17 (Fla. 4th DCA 2007); Inter-Active Servs., Inc. v. Heathrow Master Ass'n., Inc., 809 So.2d 900, 902 (Fla. 5th DCA 2002). Other cases have applied a "transactional approach" and examined whether the claims arise out of the same transaction, series of events, or wrongful act. AMEC Civil, LLC v. State, Dep't of Transp., 41 So.3d 235, 239 (Fla. 1st DCA 2010); Froman v. Kirland, 753 So.2d 114, 116 (Fla. 4th DCA 1999).

The Fourth District Court of Appeal attempted to provide some clarity in Tyson v. Viacom, Inc., 890 So.2d 1205 (Fla. 4th DCA 2005). The plurality opinion explained that what constitutes a single "cause of action" depends on which aspect of res judicata is applicable. The overarching test "defines a cause of action in terms of identical facts." Id. at 1212. Thus, the determinative inquiry is "whether the essential elements of the cause of action, and thus the ultimate facts to be proved, are the same." Leahy, 960 So.2d at 17-18.

However, an additional definition must be employed when applying a particular aspect of res judicata — the rule against splitting causes of action (or the rule against case-splitting). Tyson, 890 So.2d at 1212. This rule "defines a cause of action in terms of a single wrongful act" or as "the right which a party has to institute a judicial proceeding." Id. at 1212, 1220 (Gross, J., concurring specially). The majority opinion in Tyson receded from the broad, transactional approach espoused in earlier cases. Id. at 1213, 1222 (Gross, J., concurring specially). It also explained that its definition is narrower than simply a group of operative facts giving rise to a suit. Id. at 1220.

14

In illustrating the interplay between these two tests, the plurality opinion explained:

> Within one set of identical facts, three wrongful acts could exist. In such a circumstance, bringing separate claims in separate complaints based on each wrongful act would not run afoul of the rule against splitting causes of action. However, this factual scenario would still run afoul of res judicata because the three separate claims would be based on identical facts. This hurdle is overcome where there are three separate sets of facts in addition to three separate wrongful acts. In such a circumstance there are three claims, each of which constitutes an independent cause of action capable of being raised in separate complaints. Therefore, neither res judicata nor the rule against splitting causes of action will bar a second complaint including two claims in such a circumstance.

Id. at 1212.

If the claims are premised on different facts, then neither res judicata nor the rule against case-splitting will apply. Id. Here, then, we must parse out whether the present case involves separate facts from those adjudicated in the prior cases. See id. To do so, we examine the "issues as they were made or tendered by the pleadings." Hay v. Salisbury, 109 So. 617, 621 (Fla. 1926); accord Variety Children's Hosp. v. Mt. Sinai Hosp. of Greater Miami, Inc., 448 So.2d 546, 547 (Fla. 3d DCA 1984); Daniel v. Dep't of Transp., 259 So.2d 771, 774 (Fla. 1st DCA 1972) ("A fair way of determining the nature of a cause of action is to examine the main prayer of a plaintiff's complaint.").

In the first Florida case, the complaint asserted four counts: (1) breach of contract; (2) specific performance; (3) punitive damages; and (4) unjust enrichment. The claims centered on the Stock Agreement, described as ten percent of the stock in Rice's corporation as consideration for Langer's assignment of his interest in the partnership and the Hawaiian Tropic trademark. The complaint did not mention the Proceeds Agreement. The sole basis for Langer's requested relief was the Stock Agreement.

The Proceeds Agreement did not come to light in the first case until Rice filed a motion for summary judgment on the

basis of the statute of limitations. In his opposing memorandum, Langer referenced the Proceeds Agreement as "[t]he first written document evidencing an agreement between Langer and Rice wherein. Langer would receive an interest in Rice's business." Langer testified in a deposition that the Stock Agreement superseded all earlier proposals, including the Proceeds Agreement. Yet his strategic characterization of the Proceeds Agreement did not alter the cause of action as framed in the complaint; it merely solidified his position in seeking to enforce the Stock Agreement. Langer raised the Proceeds Agreement as evidence of an enforceable Stock Agreement, not as a separate cause of action.

Moreover, given the procedural posture of the present case, we are required to draw all factual inferences in favor of Langer. Querubin, 107 Hawai'i at 56, 109 P.3d at 697. We must therefore assume that the Proceeds Agreement was in fact separately enforceable, despite Langer's rather contrary assertions in the prior cases. The first Florida case therefore did not seek to enforce the Proceeds Agreement. The sole cause of action concerned the Stock Agreement.

In the second Florida case, Langer asserted three counts concerning an "employment and incentive agreement": (1) declaratory judgment; (2) quantum meriut; and (3) breach of contract. The factual foundation for these claims was an alleged incentive agreement under which Langer would receive ten percent of the stock in Rice's corporation in exchange for his continuing efforts to promote Hawaiian Tropic.

The alleged facts surrounding the incentive agreement were virtually identical to those in Langer's first Florida cause of action. The sole differing fact was the consideration — Langer's continuing efforts to promote the product instead of the assignment of his trademark and interest in the partnership. To constitute the same cause of action, only the facts "essential to the maintenance of the suits" must be the same. Hay, 109 So. at

621.  To maintain a cause of action for breach of contract, a party must prove a contract, a breach, and damages.  Rollins, Inc. v. Butland, 951 So.2d 860, 876 (Fla. 2d DCA 2006).  In comparing the first and second Florida cases, the necessary facts regarding the alleged agreements were identical.  The contract Langer sought to enforce, whether framed as a "stock" or "incentive" agreement, was for ten percent of the stock in Rice's corporation.  Rice allegedly breached the contract by failing to deliver the stock as agreed.  The resulting damages were identical.  The second Florida case thus asserted the same cause of action as the first:  Rice's breach of the Stock Agreement.

Consistent with his position in the first Florida case, Langer alleged in the second case that the incentive/stock agreement arose from the original Proceeds Agreement, which the parties modified by mutual consent.  Nonetheless, the three counts only sought enforcement of the incentive agreement.  As in the first case, Langer's characterization of the Proceeds Agreement merely provided evidentiary support for his claim regarding the incentive agreement.  It did not raise a separate cause of action.  The facts, as alleged, supported an action for breach of the Stock Agreement alone.

As in the prior cases, the complaint herein asserts a claim for breach of contract.  The contract that forms the basis of the suit, however, is not the Stock Agreement.  The alleged consideration overlaps with that alleged in the prior cases,[9] yet the terms of the contract are different.  The Proceeds Agreement concerns ten percent of the proceeds upon sale of the Hawaiian Tropic business, not an immediate transfer of stock.  Under the

---

[9]    As in the first case, the complaint herein alleges the trademark assignment as partial consideration.  Following Rice's motion for summary judgment on grounds of res judicata, Langer's counsel attempted to retract the assertion that the trademark assignment was part of the consideration for the Proceeds Agreement. Yet he did not amend the complaint to redact the reference to the trademark assignment.  To the contrary, in his First Amended Complaint, Langer again alleged that the trademark assignment was part of the consideration furnished for the Proceeds Agreement.

handwritten letter evidencing the agreement, further conditions apply. Langer would receive ten percent of the sales proceeds "if he is still living in Hawaii, working for Hawaiian Tropic, and meeting all of the above requirements of this Agreement."

The facts necessary to establish a breach of the Proceeds Agreement are different from those alleged in the prior cases. Most notably, a breach of the Proceeds Agreement could not occur until Rice sold the Hawaiian Tropic business. In contrast, the alleged breach of the Stock Agreement (or incentive agreement) occurred upon Rice's failure to immediately transfer the stock. The damages resulting from a breach of the Proceeds Agreement also differ from those alleged in the prior cases. Whereas the prior cases sought the immediate transfer of stock, the present case seeks damages in an amount determined by the recent sale of the business.[10] The complaint therefore alleges a different set of facts than that involved in the Florida cases.

Likewise, the evidence necessary to establish a breach of the Proceeds Agreement is different from that involved in the prior cases. See Tyson, 890 So.2d at 1209 (stating that the "[i]dentity of the cause of action" requirement exists when "the facts or evidence necessary to maintain the suit are the same in both actions") (citation and internal quotation marks omitted). In the prior cases, the requisite evidence included: (1) the existence of the Stock Agreement, which allegedly arose circa 1975 to 1976; (2) Rice's failure to immediately transfer the stock; and (3) damages resulting from the failure of stock delivery. The present case, however, requires evidence establishing: (1) the existence of the Proceeds Agreement, which allegedly arose circa 1972 to 1973; (2) Rice's sale of the

---

[10] Rice argues that the Stock Agreement was merely a vehicle for Langer to receive the same thing contemplated in the Proceeds Agreement — a portion of the sale proceeds. He references the various draft voting trust agreements as evidence of the agreements' functional equivalence. However, Rice's argument frames the facts far too broadly. Although the agreements may have overlapped in their intent and outcome, the present complaint nonetheless alleges a separately enforceable agreement.

Hawaiian Tropic business; (3) Langer's satisfaction of certain conditions precedent; (4) Rice's failure to deliver ten percent of the sales proceeds; and (5) a different measure of damages.

Certain evidence overlaps between the present and prior cases. For example, the basis of Langer's present action is a handwritten letter from circa 1972 to 1973. Langer utilized the same letter in the prior cases as evidence of negotiations that culminated in the Stock Agreement. Nonetheless, the majority of the evidence is different, as are the "ultimate facts to be proved." Leahy, 960 So.2d at 18.

Likewise, many of the facts alleged in the present case overlap with those alleged in the prior cases. Most prominently, the consideration alleged for the Proceeds Agreement includes, inter alia, the Hawaiian Tropic trademark and Langer's efforts in promoting the product. In the first case, Langer alleged that the trademark assignment was part of the consideration for the Stock Agreement. In the second case, he asserted that his efforts in promoting the product constituted the consideration for the incentive agreement. Despite some overlap, the present complaint alleges sufficient independent consideration to form the basis of a separate contract. See 17A Am. Jur. 2d Contracts § 122 (discussing sufficiency of consideration). Several causes of action may arise from overlapping facts, as "separate sets of facts may exist within a larger set of facts." Tyson, 890 So.2d at 1212. Res judicata does not bar such actions because "the whole is more than the sum of its parts." Id. (citation and internal quotation marks omitted).

Moreover, it is fundamental that two separate contracts give rise to two causes of action, even if they overlap in subject matter or derive from the same negotiations. See B & V Ltd. v. All Dade Gen. Constr., Inc., 662 So.2d 413, 415 (Fla. 3d DCA 1995). The same consideration can likewise serve as the basis for separate contracts, each creating a separate cause of action, so long as there is some new and independent

19

consideration. See 17A Am. Jur. 2d Contracts § 122. Because Langer's present complaint alleges the breach of a separate contract, it constitutes a separate cause of action.

The nature of the alleged Proceeds Agreement confirms that it supports a separate cause of action. By its terms, the agreement could not be performed until Rice sold the Hawaiian Tropic business and Langer satisfied certain conditions precedent. A cause of action for a breach of contract accrues upon the breach. Banks v. Lardin, 938 So.2d 571, 574 (Fla. 4th DCA 2006). The cause of action for a breach of the Proceeds Agreement thus did not occur until 2007 (when the business was sold). In contrast, the cause of action for the breach of the Stock Agreement accrued decades ago (when Rice failed to immediately transfer the stock).

Likewise, the judgment in the first case confirms that it only adjudicated a cause of action arising from the Stock Agreement. Rice moved for summary judgment on the grounds that enforcement of the Stock Agreement was time-barred. He maintained that "even if an agreement existed on the terms alleged by plaintiff in his Complaint and deposition, plaintiff's causes of action accrued more than four years before this suit was filed, and therefore are barred as a matter of law by the applicable statute of limitations." The resulting judgment thus barred the causes of action arising out of the Stock Agreement, which had accrued by 1978.

The present cause of action arising from the Proceeds Agreement did not accrue until 2007. See Banks, 938 So.2d at 574 (cause of action accrues upon breach). The prior judgment thus did not bar any causes of action arising out of the Proceeds Agreement because those rights had not yet accrued. See id.; Lobato-Bleidt v. Lobato, 688 So.2d 431, 434 (Fla. 5th DCA 1997) ("A judgment is not res judicata as to rights which were not in existence and which could not have been litigated at the time the prior judgment was entered.") (emphases in original).

20

The Florida Third District Court of Appeal analyzed similar facts in B & V Ltd., 662 So.2d 413. There, B & V entered into several contracts with All Dade for roof repairs and replacements on numerous buildings. Id. at 414. Each contract set forth the specifications for a single building. Id. In the first case, All Dade sued B & V for breach of contract, alleging a failure to pay under contracts for certain buildings. Id. B & V asserted an affirmative defense that the work was improperly performed. Id. In the second case, B & V sued All Dade to recover damages for unsatisfactory work for a number of other buildings that were not involved in the first lawsuit. Id. All Dade asserted that the second case was barred by res judicata. Id. at 414-15.

The court on appeal concluded that the cases involved separate contracts, each giving rise to separate causes of action. Id. at 415. It noted that even though the contracts were the result of contemporaneous negotiations, the work for each building was memorialized in a separate contract. Id. Additionally, the facts required to show poor workmanship for the buildings involved in the second suit were necessarily different from those involved in the first suit. Id. Res judicata thus did not bar the second action asserting separate causes of action. Id.

Likewise, the present complaint alleges a separate contract, despite the overlapping negotiations and subject matter. As in B & V, the facts necessary to establish a breach of the Proceeds Agreement differ from those regarding the Stock Agreement. The present complaint therefore asserts a different cause of action.

2. *The Present Action Does Not Merely Assert a New Legal Theory*

Rice argues that Langer's claim in the present case merely asserts a different theory regarding the previously litigated agreements and is therefore barred by res judicata.

21

Under the rule against case-splitting, a party cannot avoid res judicata merely by asserting a different legal theory regarding the same transaction or series of events. Signo v. Fla. Farm Bureau Cas. Ins. Co., 454 So.2d 3, 5 (Fla. 4th DCA 1984). Although a single wrongful act may give rise to multiple legal theories, such theories do not constitute separate causes of action. Id. Moreover, different legal theories necessarily require different variations or "shadings of the facts." Id. (quoting Restatement (Second) of Judgments § 24, at 200 (1982)). Such variations are insufficient to support a separate cause of action. Id.

For purposes of the rule against case-splitting, a cause of action is defined as "the right which a party has to institute a judicial proceeding." Tyson, 890 So.2d at 1220-21; accord AMEC Civil, LLC, 41 So.3d at 238. As discussed above, the court in Tyson clarified that a subsequent case involving a separate cause of action (as defined by the "same facts and evidence" test) will not run afoul of the rule against case splitting. See 890 So. 2d at 1212, 1215. The rule against case splitting is therefore only relevant where the party asserts multiple causes of action arising from identical facts. See id. at 1212. Where the subsequent case involves different facts, as it does here, the rule does not apply. See id.

Signo illustrates these principles. There, the plaintiff was involved in a vehicle collision with a driver who was transporting a load of corn for a produce company. 454 So.2d at 3-4. In the first suit, the plaintiff asserted a claim of vicarious liability against the driver's employers. Id. at 3. After the court entered summary judgment against her, the plaintiff filed another claim asserting that the driver's employers were liable for his negligent operation of the vehicle based on their status as bailees of the truck. Id. at 4. The court noted that although facts required to prove the employers' status for vicarious liability differed slightly from those

22

required to prove bailment, both claims involved the same underlying facts: the collision of the vehicles. <u>Id.</u> at 4-5. It therefore held that "the mere changing of the theory on which the plaintiff proceeds does not constitute a distinct and different cause of action obviating the defense of res judicata." <u>Id.</u> at 5. It further opined:

> That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.

<u>Id.</u> (quoting <u>Restatement (Second) of the Law of Judgments</u> § 24 at 200).

Here, however, the present complaint does not merely involve different shadings or emphases of the same facts. Rather, Langer's present cause of action is based on a fundamentally new set of facts: the Proceeds Agreement, a separate contract with different terms; Rice's sale of the business in 2007; and the resultant damages. None of those facts formed the basis of the prior cases. Langer's present action involves a *different right*, and the rule against case-splitting does not apply. <u>See</u> <u>Tyson</u>, 890 So.2d at 1220.

      3.    *Whether Present Claims Should Have Been Brought in Prior Suit(s)*

Rice argues that because Langer could have sued upon the Proceeds Agreement in the earlier cases, the present action is barred. Under the doctrine of anticipatory repudiation, a plaintiff acquires the elective right to sue when the other party repudiates the contract. <u>Peachtree Cas. Ins. Co. v. Walden</u>, 759 So.2d 7, 8 (Fla. 5th DCA 2000); <u>accord</u> <u>Banks</u>, 938 So.2d at 575. Anticipatory repudiation occurs when a party definitely and unconditionally renounces future performance of the contract. <u>Peachtree</u>, 759 So.2d at 8; <u>see</u> <u>Banks</u>, 938 So.2d at 575. In a deposition procured during the course of the first case, Rice

testified that he never intended to give Langer ten percent of the proceeds upon sale of the corporation. His testimony constitutes a definite and unconditional renunciation of the Proceeds Agreement. Langer therefore acquired the right to sue prior to the second Florida case.

Under Florida law, res judicata bars two types of claims: (1) those that were actually raised and adjudicated in the prior case, and (2) those that could have been raised within the issues framed by the pleadings. Topps v. State, 865 So.2d 1253, 1255 (Fla. 2004); Youngblood v. Taylor, 89 So.2d 503, 505 (Fla. 1956). A number of cases have phrased the second part in broad terms. See, e.g., AMEC Civil, 41 So.3d at 239 (explaining that res judicata bars "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose") (quoting Restatement (Second) of Judgments § 24 at 196); Lobato-Bleidt, 688 So.2d at 433 ("The initial judgment is conclusive as to all matters that were or could have been raised."). The seminal case, Hay v. Salisbury, sets forth the rule as follows:

> When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive in the latter not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, *within the issues as they were made or tendered by the pleadings or as incident to or essentially connected with the subject-matter of the litigation*, whether the same, as a matter of fact, were or were not considered. As to such matters a new suit *on the same cause of action* cannot be maintained between the same parties. This rule applies to every question falling within the purview of the original action, both in respect to matters of claim and defense, which could have been presented by the exercise of due diligence.

109 So. at 621 (emphases added) (citations and internal quotation marks omitted).[11]

---

[11] The court in Hay went on to state:

A judgment on the merits is an absolute bar to a subsequent

Res judicata does not require all possible causes of action arising from a related matter to be raised in a single suit. See Tyson, 890 So.2d at 1216-17, 1220-21. Instead, it only precludes relitigation of matters "within the issues as they were made or tendered by the pleadings or as incident to or essentially connected with the subject-matter of the litigation." Tyson, 890 So.2d at 1216 (quoting Hay, 109 So. at 621). Accordingly, only certain closely-connected causes of action must be raised in a single suit. Id. at 1216-17.

For example, in Hay, the seller brought the first cause of action to quiet title to real property. 109 So. at 619. The seller obtained a final decree declaring him owner of the property, free and clear of all claims of the purchaser. Id. In the second suit, the purchaser sought specific performance of a contract for purchase of the real property. See id. at 620. The court held that there was sufficient identity of causes of action because the alleged contract would have precluded the quiet title suit. Id. at 621. Indeed, the quiet title suit "was directed at extinguishing any claim that [the purchaser] had under the purported contract." Tyson, 890 So.2d at 1217 (discussing Hay). The court could not have issued the decree quieting title without addressing the validity of the contract. Id.

Another case confirms that res judicata only bars different causes of action that are necessary to or essentially connected with the resolution of the prior litigation. In re Haskin's Estate, 63 So.2d 320 (Fla. 1953). In Haskin, the plaintiff filed a claim against the estate alleging that the decedent had agreed to make a will naming her as the sole

---

action *on the same claim*, and concludes the parties and their privies, not only as to every matter which was offered and received to sustain or defeat the claim, but also as to any other admissible matter that might have been offered for either purpose.

Id. (emphasis added) (citation and internal quotation marks omitted). Because the present action does not concern the "same claim" or cause of action, this particular phrasing of the rule is not applicable.

beneficiary. Haskin, 63 So.2d at 320. The probate judge entered a final order declaring that she was not entitled to any portion of the estate. Id. at 321. In a second suit, the plaintiff brought a claim against the estate on the theory that she was the decedent's common-law wife. Id. The Supreme Court held that res judicata applied because "nothing [was] presented in the second case that might not have been properly presented and settled in the first case." Id. The second suit was thus "essentially connected" with the cause of action asserted in the first. Tyson, 890 So.2d at 1217 (discussing Haskin).

Here, by contrast, the claims regarding the Proceeds and Stock Agreements were not so closely connected as to constitute a single cause of action under Hay and Haskin. Although Langer referenced the Proceeds Agreement as evidence of the Stock Agreement, it was not determinative of the claims asserted in the prior cases. The Stock Agreement did not turn on the enforceability or validity of the Proceeds Agreement.

Moreover, the Proceeds Agreement was not included in the "issues as they were made or tendered by the pleadings" in the prior cases. Hay, 109 So. at 621. Although mentioned in the second case, it was not raised as a separate issue. The complaint merely alleged that the Proceeds Agreement was the first step in negotiations culminating in the Stock Agreement. It did not seek enforcement of the Proceeds Agreement itself nor raise the enforceability of the agreement.

C.   Statute of Limitations Issues

The Circuit Court also granted summary judgment on the basis of the statute of limitations. Rice argues that:   (1) Langer's breach of contract claim is time-barred based on Rice's repudiation; and (2) Langer's fraudulent inducement claim accrued at the time the Proceeds Agreement was executed and is thus time-barred.

26

1.    *The Breach of Contract Claims*

As discussed above, anticipatory repudiation occurs when a party communicates definite renunciation of future performance under the contract. Peachtree, 759 So.2d at 8; accord Romig v. deVallance, 2 Haw. App. 597, 605, 637 P.2d 1147, 1152-53 (App. 1981). Because anticipatory repudiation merely gives rise to a *right* to sue, the statute of limitations only begins running if the plaintiff elects to sue upon the repudiation. See Banks, 938 So.2d at 575-76. If the plaintiff elects not to sue, the statute begins running upon the other party's failure to perform under the contract. See id. at 576.

Rice alleges that Langer's "contract claim is time-barred . . . under the 'total breach doctrine'" because Langer's "claims under any purported future 10% payment began to accrue in 1976 after [he] failed to receive stock or at the very latest in 1982 after it became clear as a result of Rice's repudiation that no future payment would come." The "total breach" doctrine merely establishes that when a "breach is not wholly anticipatory because it involves some contractual nonperformance, the statute of limitations begins to run immediately." Kinsey v. United States, 852 F.2d 556, 558 (Fed. Cir. 1988). A total breach thus requires a present breach in addition to repudiation. Restatement (Second) of Contracts § 243(2) (1981) ("[A] breach by non-performance accompanied or followed by a repudiation gives rise to a claim for damages for total breach.").

However, Rice's arguments regarding the breach of contract claim here fail. First, Langer's failure to receive stock in 1976 only pertains to the Stock Agreement (not the Proceeds Agreement, which is the subject of the present action). This is because not receiving the stock is unrelated to the parties' alleged separate contract regarding Langer obtaining 10% of the company's sales proceeds upon its sale. Thus, the statute of limitations may have begun running in 1976 for the Stock Agreement, but not for the Proceeds Agreement. Moreover, viewing

27

the evidence in the light most favorable to Langer, Rice's deposition testimony[12] from the 1982 case established, at most, anticipatory repudiation. Because performance was not due until sale of the business, an actual breach could not have occurred until 2007 (when the company was sold). As Langer elected not to sue upon the repudiation, the statute of limitations did not begin running until Rice's alleged breach in 2007. Therefore, the breach of contract claim is not time-barred because, under either Florida or Hawai'i law, it lies well within the statute of limitations for breach of contract.[13]

---

[12]  During the deposition, Rice asserted that he never intended to give Langer 10% of the stock or net proceeds of Tanning Research Laboratories, Inc.

[13]  The parties do not address whether the Florida or Hawai'i statute applies and, as the outcome is the same in either case, we need not reach this issue. Hawai'i Revised Statutes (HRS) § 657-1(1) states as follows:

> The following actions shall be commenced within *six years* next after the cause of action accrued, and not after:
>
> > (1) *Actions for the recovery of any debt founded upon any contract*, obligation, or liability, excepting such as are brought upon the judgment or decree of a court; excepting further that actions for the recovery of any debt founded upon any contract, obligation, or liability made pursuant to chapter 577A shall be governed by chapter 577A;

Haw. Rev. Stat. § 657-1 (1993) (emphasis added).

Similarly, Florida Statutes § 95.11 states the following:

> Actions other than for recovery of real property shall be commenced as follows:
> . . .
> (2) Within *five years*.--
> . . .
> > (b) A legal or equitable action on a contract, obligation, or liability founded on a written instrument . . . .
>
> . . .
> (3) Within *four years*.--
> . . .
> > (k) A legal or equitable action on a contract, obligation, or liability *not* founded on a written instrument . . . .

Fla. Stat. Ann. § 95.11 (West) (emphasis added) (showing that the statute of limitations for a contract founded on a written instrument is five years and on a non-written one is four years).

2.    *The Fraudulent Inducement Claim*

Langer also asserts a claim for fraudulent inducement arising out of the Proceeds Agreement.  Fraudulent inducement requires:  "(1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment."  Rose v. ADT Sec. Servs., Inc., 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008).[14] Under Florida law, the statute of limitations for such a claim is four years[15] (Tyson v. Viacom, Inc., 890 So.2d 1205, 1213 (Fla. 4th DCA 2005)), and Hawai'i law provides for a six year statute of limitations[16] (see Eastman v. McGowan, 86 Hawai'i 21, 27, 946 P.2d 1317, 1323 (1997)).

The parties do not address the choice-of-law issue concerning whether the Florida or Hawai'i statute applies. However, under either law, the statute of limitations has

---

[14]    Hawai'i law is very similar, requiring "(1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to [his or her] damage."  Matsuura v. E.I. du Pont de Nemours and Co., 102 Hawai'i 149, 163, 73 P.3d 687, 701 (2003) (brackets in original) (quoting Hawai'i Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 230, 11 P.3d 1, 18 (2000)).

[15]    Florida Statutes § 95.11(3)(j) states as follows:

Actions other than for recovery of real property shall be commenced as follows:
. . .
(3) Within four years.--
. . .
    (j) A legal or equitable action founded on fraud.

Fla. Stat. Ann. § 95.11 (West).

[16]    HRS § 657-1(4) states as follows:

The following actions shall be commenced within six years next after the cause of action accrued, and not after:

    (4) Personal actions of any nature whatsoever not specifically covered by the laws of the State.

Haw. Rev. Stat. § 657-1(4) (1993).

expired. A claim for fraudulent inducement generally accrues upon execution of the contract. See Eastman v. McGowan, 86 Hawai'i 21, 27, 946 P.2d 1317, 1323 (1997) (noting that fraudulent misrepresentation accrued, "[a]t a minimum," before promisor's death); see also Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737, 748 (2d Cir. 1979); Chabria v. EDO Western Corp., No. 2:06-CV-00543, 2009 WL 891746, at *15 (S.D. Ohio Mar. 30, 2009), aff'd, 374 F. App'x 653 (6th Cir. 2010); Kerce v. Bent Tree Corp., 305 S.E.2d 462, (Ga. Ct. App. 1983); Rogal v. Wechsler, 522 N.Y.S.2d 123, 124 (N.Y. App. Div. 1987). Additionally, Langer has not alleged fraudulent concealment of a cause of action, which would potentially toll the statute of limitations under HRS § 657-20.[17] Nevertheless, even if a tolling argument was made, the statute of limitations would only be tolled until Langer's second Florida case, where he was put on explicit notice that Rice had no intention of honoring the Proceeds Agreement at all. For similar reasons, Florida law (though articulating a different standard upon which accrual begins)[18] yields the same result. This is because, as stated above, Langer "discovered or should have [] discovered" that Rice did not intend to honor the Proceeds Agreement during his second

---

[17]     HRS § 657-20 states as follows:

> If any person who is liable to any of the actions mentioned in this part or section 663-3, fraudulently conceals the existence of the cause of action . . . the action may be commenced at any time within six years after the person who is entitled to bring the same discovers or should have discovered, the existence of the cause of action or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Haw. Rev. Stat. § 657-20 (1993).

[18]     Florida law provides that accrual of a claim for fraud in the inducement occurs when "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. Ann. § 95.031(2)(a) (West); Tyson v. Viacom, Inc., 890 So. 2d 1205, 1213 (Fla. Dist. Ct. App. 2005).

Florida case, which is well beyond Florida's four-year statute of limitations for fraud.

Thus, the fraudulent inducement claim has long since expired, whether accrual occurred upon the execution of the Proceeds Agreement circa 1973 or during Langer's second Florida suit in the early 1980s. Both of these time frames are well beyond the applicable statute of limitations period. Therefore, the Circuit Court did not err in granting summary judgment on Langer's fraudulent inducement claim on the basis of the statute of limitations.

V. CONCLUSION

Based on the foregoing, we conclude that the Circuit Court erred in granting summary judgment on Counts I and II on the basis of res judicata. With respect to Counts I and II, we vacate the Circuit Court's January 13, 2009 Final Judgment and remand for further proceedings; we affirm the Final Judgment in all other respects.

DATED: Honolulu, Hawai'i, October 28, 2013.

On the briefs:

Richard Turbin
Rai Saint Chu
Janice D. Heidt
(Turbin Chu, Attorneys)
       and
David A. Vukelja
for Plaintiffs-Appellants

David W. Proudfoot
(Belles Graham Proudfoot,
 Wilson & Chun, LLP)
       and
JAMES R. MCGIBBON
for Defendant-Appellee

Chief Judge

Associate Judge

Associate Judge

31